IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KIM MADERE | § | |
| | § | |
| V. | § | A-10-CV-812  LY |
| | § | |
| COMPASS BANK | § | |

## ORDER

Before the Court is Plaintiff's Motion to Compel Discovery (Clerk's Doc. No. 16); Defendant Compass Bank's Response (Clerk's Doc. No. 23); and Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Compel (Clerk's Doc. No. 27). On August 31, 2011, the District Court referred the motion to the undersigned Magistrate Judge for a resolution pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges (Clerk's Doc. No. 19). On September 27, 2011, the Court held a hearing on the aforesaid motion. After the hearing, the Plaintiff submitted a reply (Clerk's Doc. No. 29), and the Defendant filed a supplemental response (Clerk's Doc. No. 32).

Kim Madere alleges that her former employer, Compass Bank, violated the Family and Medical Leave Act (FMLA) by discriminating and retaliating against her after she took FMLA leave. Madere worked for Compass Bank as a business banking officer (BBO) from June 2006 until January 2009. She took FMLA leave in late 2007 until early 2008. After Compass Bank fired her, her lawyer sent a demand letter to the bank on May 20, 2010, and she filed suit September 23, 2010. Compass Bank admits that it fired Madere, but claims that it fired her because of her poor job performance—not because she took FMLA leave. Compass Bank claims that it brought in Libby

Seamans in late 2008 and she fired seven BBOs, including Madere, based on a ranking report that measured the BBOs' production over the last two quarters of 2008.

Madere has requested three categories of documents to support her contention that Compass Bank wrongfully terminated her. First, she requests the personnel files of business banking officers and branch managers Compass Bank either did not terminate, terminated and then rehired, or simply hired after the bank fired Madere. Second, she requests ranking reports from 2007 and 2008. Although Compass Bank produced the ranking reports from the last two quarters of 2008—the reports it claims to have relied on when making its layoff decisions—it did not produce reports from the first half of 2008 or any reports from 2007, and claims it cannot find any copies. Finally, Madere requests emails concerning her FMLA leave and her termination. Compass Bank produced responsive emails, but only if someone had retained a hard copy of an email. The other emails were deleted under the bank's e-mail retention/destruction policy. Madere requests the Court to order Compass Bank to use its backup tapes to restore and find responsive emails, which Compass Bank resists as cost-prohibitive.

The Court GRANTS Madere's request for the personnel files of the BBOs and branch managers. At the hearing, Compass Bank's counsel stated that the number of relevant people was approximately 15 people. This information may be relevant to Madere's claim, as she must demonstrate that similarly-situated employees were treated differently. Therefore, the Court ORDERS Compass Bank to produce these personnel files.

The Court also GRANTS Madere's request for the ranking reports from 2007 and the first half of 2008. While obviously Compass Bank cannot produce what it does not possess, Compass Bank's counsel stated that the reports were sent to branches all over the country. The Court

ORDERS Compass Bank to make a diligent effort to locate copies of those reports and produce them to Madere.

The emails raise a more difficult issue. Compass Bank averred that it would cost over $270,000 and require hundreds of hours to search for relevant emails that might exist on backup tapes. At the hearing, the Court granted Madere time to file an affidavit contradicting that estimate. She did so, but her expert could not ascertain an estimate for the actual cost. Further, in Compass Bank's reply, its expert refuted Madere's expert's method for restoring the backups and his contention that it would cost significantly less. Madere's expert claims that Compass Bank need not restore all 510 backup tapes, but he makes that claim "without any information regarding the backup scheme" because Compass Bank had not provided it. Affidavit of Brandon Mack ¶ 8. He believes that if Compass Bank identified which tapes contained what information, it could limit its restoration to specific tapes. *Id.* ¶ 9–11. He also argues that Compass Bank could save money by outsourcing the project. *Id.* ¶ 12.

Compass Bank's expert refutes Mack's contention that it could save money by only restoring particular tapes. Affidavit of John Sibert ¶ 3. Sibert explains the system and software Compass Bank uses and states that to fully respond to Madere's request, Compass Bank would have to restore all of the backup tapes. *Id.* ¶ 4. He also expressed concern about outsourcing sensitive financial information to a third-party vendor and skepticism that it would save much money. *Id.* ¶ 8. He maintains his earlier contention that it would "require more than 350 man hours and cost more than $270,200 to restore the backup tapes." *Id.* ¶ 10.

The Court does not need to resolve the conflicting expert testimony and determine the actual cost of restoring the tapes. The amount in controversy in this case is much less than $270,000, and

3

even if the actual cost of restoring the backup tapes was only a fraction of that amount, it would still outweigh the amount Madere seeks to recover. The Court is required to limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C)(iii). As the cost to restore Compass Bank's backup tapes "outweighs its likely benefit," especially in light of the amount in controversy, the Court DENIES Madere's request for production.[1]

Accordingly, the Court HEREBY GRANTS IN PART AND DENIES IN PART Madere's Motion to Compel Discovery (Clerk's Doc. No. 16) as set forth above. Compass Bank shall produce the documents addressed herein within 20 days of the date of this order.

SIGNED this 28th day of October, 2011.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

---

[1] One of the primary reasons Madere requested to search the backup materials is to locate one or more emails she has testified she sent to supervisors giving them notice she had taken FMLA leave. It is possible that the absence of any copy of these emails could be used against Madere at trial, to try to discredit her claim of having sent them. Nothing in this order should be taken as permitting Compass Bank to do this, or to prevent Madere from approaching the trial judge and seeking an instruction to the jury addressing the fact that emails were destroyed pursuant to Compass Bank's policy and backup tapes were not searched due to the expense of doing so. Whether such measures are required is something the trial court will be in the best position to determine and is not within the scope of this referral.