IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KIM MADERE | § | |
| | § | |
| V. | § | A-10-CV-812 AWA |
| | § | |
| COMPASS BANK | § | |

## ORDER

Before the Court are Plaintiff Kim Madere's Motion for a New Trial (Clerk's Doc. No. 96); Defendant Compass Bank's Response (Clerk's Doc. No. 99); and Madere's Reply (Clerk's Doc. No. 100). Madere moves for a new trial on two grounds: Federal Rule of Civil Procedure 60(b)(3), and Federal Rule of Civil Procedure 59. Compass Bank argues that Madere received a fair trial and now, after an unfavorable verdict, is asking for a mulligan.

**I.      General Background**

The dispute that is at the heart of Madere's motion for new trial has been the focus of several prior orders, and thus much of the background material relevant to this order is set out there, and will not be repeated here. *See* Clerk's Doc. Nos. 33, 82, and 94. In brief, Madere sued Compass Bank for discriminating against her for taking leave under the Family and Medical Leave Act (FMLA) after suffering a heart attack. At trial, she argued that Compass Bank terminated her because she took FMLA leave, and then failed to rehire her for the same reason. The jury found against her on both claims.

The second of these claims focused on Compass' failure to hire Madere back after laying her off. The evidence at trial demonstrated that in the months following the layoffs, the Bank rehired several of the employees it had let go several months earlier. Madere claimed that she had made it known to Compass that she wished to be considered for a branch manager position if any such

position came open at any of Compass' Austin locations. Compass disagreed, and contended that Madere only applied for two specific positions, and, regardless, she was not qualified to be a branch manager. The Bank's sole witness on this issue was Bianca Ramos, who worked in the human resources area. She testified that because in her opinion Madere lacked the qualifications to be a branch manager, she did not pass Madere's resume on to the relevant hiring officers when branch manager positions became available. She testified that Madere's experience as a branch manager at Guaranty Bank was too remote in time and too dissimilar to make her qualified for a branch manager position with Compass. Ramos also testified that she had not been aware that Madere had previously taken FMLA leave. As Ramos was effectively the gatekeeper and main decisionmaker with regard to Madere's request to be re-hired, Madere's claim hinged on convincing the jury that Ramos's testimony was not credible.

In the present motion, Madere contends that Compass Bank prevented her from contradicting Ramos' testimony by not disclosing Ramos as a witness until just before trial, and by failing to produce information Madere had requested prior to trial that would have been powerful impeachment evidence regarding Ramos' testimony. In particular, Madere claims that Compass Bank failed to produce records related to its hiring of Christopher Dennis as manager of the branch where Madere had worked when she was a Business Banking Officer immediately prior to her layoff. In the discovery motions referred to earlier, Compass Bank contended that Dennis' records were not responsive to Madere's requests for production nor the Court's prior orders compelling discovery because he was not hired until early in 2010. Ultimately, the Court specifically required Compass Bank to produce Dennis' file. Madere contends that his resume and application materials demonstrate that he was less qualified than she was to be a branch manager, and that if she had been

2

in possession of his materials at trial she could have significantly undermined Ramos' testimony regarding why Compass did not rehire Madere.

Precisely when Dennis was hired as a branch manager is disputed. The date is important because the Court's prior order directed Compass to produce personnel files for any person hired as a branch manager in 2009. According to the Bank, Dennis was not hired until January 5, 2010, and thus his file was not within the scope of either Madere's request or the Court's order. To support this claim, the Bank points to an internal personnel document listing January 5, 2010, as his start date. But Madere provided the Court with evidence that the date on these particular forms is often inaccurate, as numerous other employees had actually started working for the Bank before the date shown on this same form in their files.

Madere contends that Compass' failure to provide her with Dennis' personnel file before trial so undermines confidence in the jury's verdict that the Court should order a new trial on the failure to rehire claim. In response, Compass Bank continues to maintain that Dennis' file was not responsive to Madere's discovery requests or the Court's previous orders, and further contends that even if it wrongfully failed to produce the file, Madere was not prejudiced as a result and there is thus no need to order a new trial.

## II. Legal Standard

### A. Federal Rule of Civil Procedure 60

Madere grounds her motion on both Rule 60 and Rule 59. First, she contends that she is entitled to a new trial under FED. R. CIV. P. 60(b)(3). In pertinent part, that rule provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or other misconduct by an opposing party.

FED. R. CIV. P. 60(b)(3). "A party making a Rule 60(b)(3) motion must establish by clear and convincing evidence (1) that the adverse party engaged in fraud or other misconduct and (2) that this misconduct prevented the moving party from fully and fairly presenting his case." *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 772 (5th Cir. 1995) (internal quotation marks omitted) (quoting *Washington v. Patlis*, 916 F.2d 1036, 1039 (5th Cir. 1990), and *Montgomery v. Hall*, 592 F.2d 278, 278–79 (5th Cir. 1979)). "'The purpose of the rule is to afford parties relief from judgments which are unfairly obtained, not those which may be factually incorrect.'" *Id.* (quoting *Diaz v. Methodist Hosp.*, 46 F.3d 492, 496 (5th Cir. 1995)). With regard to what amounts to "misconduct" under the rule, "a party may engage in Rule 60(b)(3) misconduct if he fails to disclose evidence he knows about and the production of such evidence was clearly called for." *Montgomery v. Hall*, 592 F.2d 278, 279 (5th Cir. 1979).

      B.      **Federal Rule of Civil Procedure 59**

Madere also seeks a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, which provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Beckham v. La. Dock Co.*, 124 F. App'x 268, 270 (5th Cir.2005) (per curiam) (quoting *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612 (5th Cir. 1985)). A new trial may also be granted when there is "uncertainty or contingency to the finality of the jury's determination," *see Cook v. United States*, 379 F.2d 966, 970 (5th Cir.

1967), or when the jury's inconsistent verdict cannot be reconciled, see *Crossland v. Canteen Corp.*, 711 F.2d 714, 726 (5th Cir. 1983).

## III. Analysis

Madere contends that Compass Bank's misconduct prevented her from having a fair trial when it: (1) did not disclose Bianca Ramos as a witness until after the end of the discovery period; and (2) failed to disclose the fact that Christopher Dennis had been hired as a branch manager until one day before trial, and failed to produce his file until after the verdict, and only after the third order of the Court addressed to the issue.

### A. Defendant's Actions

Madere first argues that Compass Bank's late designation of Ramos demonstrates bad faith. The Court cannot agree. Although it was quite late, Compass Bank did disclose Ramos as a witness in time for Madere to take her deposition. And after her deposition, Madere had sufficient time to request additional discovery and focus her trial strategy. Madere's argument seems to be that Compass Bank knew Ramos made the hiring decision that mattered but hid that from Madere, hoping that it would come out during trial and catch Madere unprepared. There is not clear and convincing evidence that this happened, and the Court rejects this argument.

Whether Compass Bank should have produced Dennis's file earlier and whether that file would have affected the trial is more complicated. The Bank claims that the fact of Dennis' hiring and the contents of his personnel file were not responsive to Madere's requests or the Court's orders because he did not begin at his branch manager position until January of 2010. But Compass Bank's position that it hired Dennis in January of 2010 instead of December of 2009 appears unfounded. As noted earlier, it is true that there is an internal HR document that lists his hire date as January 5,

2010, but that is not the only evidence on the point, nor is it very reliable evidence given that it is undisputed that the same date on several other employees' forms is demonstrably incorrect. The documentary evidence shows that Compass Bank offered Dennis the branch manager job in 2009, and he accepted it in 2009. Clerk's Doc. No. 96-11. Ramos sent an email "confirm[ing] our offer of employment and your acceptance" on December 30, 2009. *Id.* Thus, when the Court ordered the Bank to produce the personnel files of everyone hired as a branch manager through the end of 2009, the Bank should have produced this file, and its explanation for not doing so is flawed. If the Bank believed that the Court's use of the term "hired" meant "started work," it should have sought clarification from the Court instead of unilaterally deciding that Dennis' file was not within the scope of the Court's order.[1]

This failure is exacerbated by the fact that Compass has consistently taken a very narrow view of what it was required to produce. Obtaining all of the files of persons that were arguably similarly situated to Madere has been like pulling teeth. While the Court does not believe that the failure to produce the file before trial was the fault of the Bank's counsel or the result of any bad faith on their part, the Court does conclude from the evidence that the Bank itself did not act in diligent good faith in producing responsive documents before trial. The question thus becomes whether this misconduct justifies granting a new trial.

---

[1] The Court does not believe that such an argument would have had any merit. The order applied to anyone "hired" in 2009. The email that confirmed an offer of employment and an acceptance was a "hiring" in any sense of that term. The fact that Dennis' first day of work was not until January 5, 2010, has no bearing on when he was "hired."

### B.     Impact on Trial

A party who contends that they have been a victim of misconduct justifying a new trial under Rule 60(b)(3) need not demonstrate prejudice in a traditional sense, but rather must show she was prevented from fairly presenting her case:

> Although Rule 60(b)(3) applies to misconduct in withholding information called for in discovery . . . it does not require that the information withheld be of such a nature as to alter the result in the case. . . .  This subsection of the rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect.

*Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978) (citations omitted).  *Rozier* is a particularly instructive case.  There, the plaintiff had requested in discovery cost/benefit analyses related to certain design modifications of fuel tanks of cars similar to the 1969 Galaxie 500 (which was the vehicle at issue in that product liability case).  Ford objected to the request as being irrelevant because the cars asked about were not Galaxie 500s, but after a motion to compel, was ordered to produce the cost/benefit analyses.  *Id.*  Ford ultimately stated that there were no responsive materials.  After losing at trial, the Plaintiff learned that there were documents that were in fact responsive to the request, and moved for a new trial under Rule 60(b)(3).  *Id.* at 1340.  As Compass does here, Ford argued in *Rozier* that the report was not responsive to the trial court's order.  After finding to the contrary (stating that "by any fair reading" the trial court's order required Ford to produce the report), the Fifth Circuit concluded that the failure to produce the report was clear and convincing evidence that "Ford engaged in misrepresentation and other misconduct" under the Rule. When faced with deciding whether the misconduct merited a new trial, the Court stated:

> The more vexing question is whether nondisclosure of the Trend Cost Estimate prevented Mrs. Rozier from fully and fairly presenting her case. At trial, Mrs. Rozier contended that Ford was negligent in designing a fuel tank that could not withstand an impact such as that involved in the accident which took her husband's life.  Prior

> to trial, she expressed an intention to rely on 14 theories to explain how Ford deviated from the appropriate standard of care. Inevitably, information developed in the discovery stages of the case influenced the decision as to which theories would be emphasized at trial. We are left with the firm conviction that disclosure of the Trend Cost Estimate would have made a difference in the way plaintiff's counsel approached the case or prepared for trial and that Mrs. Rozier was prejudiced by Ford's nondisclosure.

*Rozier,* 573 F.2d at 1342 (internal quotation marks and citations omitted). After discussing the important policy considerations underpinning the obligation to respond to discovery, the Circuit found that the failure to produce the materials made the trial unfair, and granted a new trial.

The factual scenario in this case bears a great deal of similarity to that in *Rozier*. Madere made several requests for the personnel files of others who were hired for the position that she applied for. The Bank objected to producing the material, contending it was irrelevant. After a hearing, the Court ordered the production of the files. After trial, Madere learned of the existence of potentially responsive documents, and another order compelling their production was entered. When Dennis' file came to light, and its obvious potential impact on the trial was apparent, the Bank contended that it had not engaged in misconduct because the file was not within the scope of the Court's order. The Court has addressed and rejected these issues, and what remains is the question of whether the lack of Dennis' file made the trial unfair.

Madere contends that, without Dennis' personnel file, she was significantly hamstrung in attacking Ramos. She argues that allowing the Bank to sponsor Ramos as a witness to testify that the Bank never considered rehiring Madere as a branch manager because she was not qualified for that position, without Madere having Dennis' file, was fundamentally unfair. She asserts that without Dennis' file she was denied the most effective impeachment evidence there could be—evidence of someone hired by Ramos who had less impressive qualifications than Madere. The

Court agrees. Ramos was the linchpin of the Bank's defense to the failure to rehire claim. It is obvious that had Madere been able to cross-examine Ramos with Dennis' file, it could have impacted the jury's assessment of Ramos' testimony. It is important to emphasize that this does not mean that the Court believes that the outcome of the trial would have been different.[2] That is not what Rule 60(b)(3) is about. While the undersigned is loathe to ever set aside a jury's hard work and deliberate decision, Rule 60(b)(3) exists to protect the integrity of the trial process and that integrity was undermined here.

### IV.   Conclusion

For the reasons set forth above, the Court HEREBY GRANTS Plaintiff Kim Madere's Motion for a New Trial (Clerk's Doc. No. 96) as to the failure to rehire claim. The Court's judgment on that claim is hereby VACATED. The parties are ordered to confer with each other and then contact the Court's staff no later than November 2, 2012, to obtain a setting for the new trial.

SIGNED this 22nd day of October, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

---

[2]For example, the Bank has pointed out that at the time the position Dennis was hired for came open, Madere had already worked at her new job for several months, that she enjoyed it, made comparable money, worked closer to home, and it was unlikely she would have left that job to go back to Compass Bank. Further, the position opening came almost two years after Madere took FMLA leave. Given the length of the time between the protected action (taking FMLA leave) and the time of the position coming open, it is possible that a jury would find the two events unrelated. For this reason, the Court would not have granted the motion for new trial on Rule 59 grounds.